# LIMITED PARTNERSHIP AGREEMENT

## OF

# Quartzburg Gold, LP

## TABLE OF CONTENTS

PAGE

1. DEFINITIONS. ....................................................................................... 1

2. FORMATION. ...................................................................................... 7

3. NAME AND PLACE OF BUSINESS. ................................................ 7

4. PURPOSE AND SCOPE OF PARTNERSHIP. ................................. 7

5. TITLE. ................................................................................................... 7

6. COMMENCEMENT, TERM. ............................................................. 8

7. CAPITAL CONTRIBUTIONS. .......................................................... 8

8. RIGHTS AND DUTIES OF THE GENERAL PARTNER. ................ 8

9. PARTNER FEES, SALARIES AND EXPENSES. ............................ 11

10. PROFITS, LOSSES AND DISTRIBUTIONS. ................................. 11

11. SALE, DISSOLUTION AND LIQUIDATION. ............................... 14

12. LIMITED PARTNERS. ...................................................................... 15

13. TRANSFER OF LIMITED PARTNER INTERESTS. ..................... 17

14. TRANSFER OF GENERAL PARTNER'S INTEREST. ................. 18

15. MISCELLANEOUS FINANCIAL AND ACCOUNTING MATTERS. ........ 19

16. AMENDMENTS. ................................................................................ 20

17. POWER OF ATTORNEY. ................................................................. 20

18. MEETINGS; MEANS OF VOTING. ............................................... 21

19. WITHDRAWALS. .............................................................................. 22

20. MISCELLANEOUS. .......................................................................... 22

THE LIMITED PARTNER INTERESTS REPRESENTED BY THIS INSTRUMENT HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS, EITHER PURSUANT TO APPLICABLE EXEMPTIONS OR BECAUSE THE LIMITED PARTNER INTERESTS ARE NOT SECURITIES. WITHOUT SUCH REGISTRATION, THESE LIMITED PARTNER INTERESTS MAY NOT BE SOLD, PLEDGED, HYPOTHECATED, TRANSFERRED OR OTHERWISE DISPOSED OF AT ANY TIME WHATSOEVER, EXCEPT UPON DELIVERY TO THE PARTNERSHIP OF AN OPINION OF COUNSEL SATISFACTORY TO THE PARTNERSHIP'S GENERAL PARTNER THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER OR THE SUBMISSION TO THE GENERAL PARTNER OF THE PARTNERSHIP OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE GENERAL PARTNER TO THE EFFECT THAT ANY SUCH TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, OR OTHER APPLICABLE STATE OR FEDERAL SECURITIES LAWS OR ANY RULE OR REGULATION PROMULGATED THEREUNDER. ADDITIONALLY, ANY SALE OR OTHER TRANSFER OF THESE LIMITED PARTNER INTERESTS IS SUBJECT TO CERTAIN RESTRICTIONS THAT ARE SET FORTH IN THIS AGREEMENT.

# LIMITED PARTNERSHIP AGREEMENT
## OF
## QUARTZBURG GOLD, LP

**THIS LIMITED PARTNERSHIP AGREEMENT**, dated as of April 16, 2012, (the "**Agreement**"), by and between Quartzburg Gold, LP, an Idaho limited partnership formed on February 3, 2012 (the "**Partnership**"), ISR Capital, LLC, an Idaho limited liability company formed on November 14, 2011 (the "**General Partner**"), and such persons as hereafter become limited partners in accordance with the provisions of this Agreement and Title 53 of the Idaho Statutes also known as the Idaho Uniform Limited Partnership Act by executing or causing to be executed a signature page in the form attached hereto (the "**Investing Limited Partners**").

### BACKGROUND INFORMATION

The General Partner and the Limited Partners desire to form a limited partnership pursuant to the laws of the State of Idaho for the purpose described below.  To that end the General Partner has prepared, executed and filed with the Idaho Secretary of State a Certificate of Limited Partnership and has agreed to issue to the Limited Partners units of Limited Partnership Interest described herein. Accordingly, in consideration of the mutual promises contained herein, the General Partner and the Limited Partners agree as follows:

### OPERATIVE PROVISIONS

1. **DEFINITIONS.**

As used herein, the quoted terms shall have the following meanings:

1.1  "Accountants" means such firm of independent certified public accountants as may be engaged from time to time by the General Partner to provide professional services to the Partnership.

1.2  "Act" means the Securities Act of 1933, as amended.

1.3     "<u>Admission Date</u>" of a Limited Partner means the date on which the Limited Partner's executed Subscription Agreement has been accepted by the General Partner and the purchase price for the Limited Partner's Interest has been received by the Partnership.

1.4     "<u>Affiliate</u>" shall have the meaning set forth in Rule 405 promulgated under the Act, except as otherwise provided herein.

1.5     "<u>Adjusted Capital Account Balance</u>" means, with respect to any Limited Partner, the balance, if any, in such Limited Partner's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

(1)     Increase in such balance by any amounts which such Limited Partner is obligated to restore or is deemed to be obligated to restore pursuant to the penultimate (second to last) sentence of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(1)(5); and

(2)     Decrease in such balance by such Limited Partner's share of the items described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

The foregoing definition of Adjusted Capital Account Balance is intended to comply with the provisions of Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith. The calculation of the Adjusted Capital Account Balance of a Limited Partner shall exclude any Section 754 election.

1.6     "<u>Adjusted Capital Contribution</u>" means, with respect to any Limited Partner, the aggregate amount of such Limited Partner's Capital Contributions, as at any given point in time, reduced by the amount of cash (if any) distributed to such Limited Partner's pursuant to Section 10.6 and Section 10.7.  In the event that any Limited Partner transfers all or any portion of its Interest in accordance with the terms of this Agreement, its transferee shall succeed to the Adjusted Capital Contribution of the transferor to the extent it relates to the transferred Interest.

1.7     "<u>Bankruptcy</u>." As used in this Agreement, the term "Bankruptcy," with respect to a specified Person shall refer to: (i) the appointment of a receiver, conservator, rehabilitator or similar officer for the specified Person, unless the appointment of such officer shall be challenged in an application filed within thirty (30) days after the appointment and the appointment is vacated and such officer discharged within one hundred twenty (120) days of the appointment; (ii) the taking of possession of, or the assumption of control over, all or any substantial part of the property of the specified Person by any receiver, conservator, rehabilitator or similar officer or by the United States government or any agency thereof, unless such possession or control is challenged in an application filed within thirty (30) days after such possession or control is taken and property is relinquished within one hundred twenty (120) days of the taking; (iii) the filing of a petition in bankruptcy or the commencement of any proceeding under any present or future federal or state law relating to bankruptcy, insolvency, debt relief or reorganization of debtors by or against the specified Person, provided, if filed against (and not by) the specified Person, such petition or proceeding is not challenged within thirty (30) days after it is filed and if so challenged is not dismissed within one hundred twenty (120) days of the filing of the petition or the commencement of the proceeding; or (iv) the making of an assignment for the benefit of creditors or a private composition, arrangement or adjustment with the creditors of the specified Person.

1.8     "<u>Business</u>" means the business of the Partnership, namely to finance several gold mining projects (the "**Projects**") through a loan ("**ISGC Loan**") to Idaho State Gold Company, LLC ("**Idaho State Gold Company**"), which in turn will loan, or invest the funds ("**Mining Company Loans**") to one or more operating companies

("**Mining Companies**"), including Gold Hill Mining and Reclamation Company ("**Gold Hill Mining**").  The Partnership's initial Projects are expected to include the Yellowjacket Mine, Belshazzar Mine, Thunder Mountain Mine, and, subject to satisfactory completion of due diligence, the Monarch Mountain Mine.  The General Partner expects that several additional Projects will also be funded via the ISGC Loan, as selected by Idaho State Gold Company and approved by the General Partner.  A more complete description of the Partnership's Business is contained in the Private Placement Memorandum.  The Projects are intended to generate 10 or more direct, indirect, and or induced full-time jobs for each $500,000 increment and as determined by a qualified economist.

1.9      "Capital Account" means, with respect to any Limited Partner, the sum of paid-in Capital Contribution (a) increased by all profits allocated to such Limited Partner; and (b) decreased by (i) the amount of all cash distributions to such Limited Partner, and (ii) all losses allocated to such Limited Partner.  Each Limited Partner's Capital Account shall be maintained and adjusted in accordance with the Code and the Treasury Regulations thereunder, including expressly, but not by way of limitation, the adjustments to Capital Accounts permitted by Section 704(b) of the Code and the Treasury Regulations thereunder in the case of a Limited Partner who receives the benefit or detriment of any special basis adjustment under Sections 734, 743 and 754 of the Code.

1.10     "Capital Contributions" means the total cash contributed to the Partnership by the Limited Partners pursuant to the terms of the Operating Agreement.  Any reference to the Capital Contribution of a Limited Partner for the purposes of this Operating Agreement (or "Agreement") shall include the Capital Contribution made by a predecessor holder of the interest of such Limited Partner.

1.11     "Cash Distributions" means the Cash Flow distributions as set forth in Section 10.6 hereof.

1.12     "Cash Flow" means the total cash receipts of the Partnership, plus any other funds (including amounts designated as reserves by the General Partner, where and to the extent it no longer regards such reserves as reasonably necessary to the efficient conduct of the Partnership's business) deemed available for distribution and designated as Cash Flow by the General Partner less (a) any operating expenses of the Partnership, excluding any expense not involving a cash expenditure, such as amounts charged for depreciation or depletion; (b) all payments of principal and interest on account of any Loans secured by Partnership property or any other Partnership obligations or loans, including loans made to the Partnership by any Limited Partners; (c) expenditures for capital expenditures or improvements (except to the extent financed through mortgages on Partnership property or any other Partnership borrowing or loans, or reserves previously set aside by the Partnership for such purposes); and (d) reserves for working capital and anticipated expenditures in such amounts as may be determined from time to time by the General Partner, including the acquisition of replacement Properties.  Cash Flow shall be determined separately for each fiscal year of the Partnership.

1.13     "Certificate" means the valid Certificate of Limited Partnership, duly filed in its original or any amended form in accordance with (and in all respects sufficient in form and substance under) the laws of the State of Idaho.

1.14     "Code" means the Internal Revenue Code of 1986, as amended from time to time, or corresponding provisions of subsequent laws.

1.15     "Partnership" means **Quartzburg Gold, LP**, an Idaho limited partnership, formed on January 3, 2012, which is the limited partnership subject to this Agreement, in its existing or any amended or reconstituted form

1.16    "EB-5 Application".  An I-526 Immigration Petition for Alien Entrepreneur filed with USCIS by an attorney on behalf of a Limited Partner, such Limited Partner's spouse and/or unmarried minor children, as determined by such Limited Partner, which I-526 Petition, if granted, permits the Limited Partner and the Limited Partner's spouse and unmarried minor children to apply for admission as a conditional lawful permanent resident.

1.17    "Escrow Agent" means US Bank or its successor, appointed as such under the Escrow Agreement.

1.18    "Escrow Agreement".  That certain Escrow Agreement dated April 16th, 2012, between Escrow Agent, the Partnership and each subscriber in the Offering, pursuant to which the Escrow Agent will hold and disburse funds in the  Project Escrow Account.  No interest will be paid to Limited Partners on escrowed funds and any interest earned on such funds will be deemed a fee paid to the Idaho State Regional Center.  By execution hereof, each Subscriber agrees to be bound to the terms and conditions of the Escrow Agreement to the same extent as if the Subscriber had separately executed the Escrow Agreement.

1.19    "General Partner" is ISR Capital, LLC, an Idaho limited liability company formed on November 14, 2011 and any other person(s) or entity(ies) elected or otherwise succeeding to such capacity as permitted in accordance with the terms and conditions of this Agreement.

1.20    "General Partner Interest" means the General Partner's twenty percent (20%) equity interest in the Partnership.

1.21    "Interest" means the ownership interest of each Partner in the Partnership.

1.22    "ISRC Licensing Fee" means an annual licensing fee to Idaho State Regional Center equal to  one percent (1%) of the total capital contributions made to the Partnership by the Limited Partners, which fee shall be prorated for each quarter-annual period and payable annually in advance.  Payments of this fee shall be made from available cash and shall not be deducted from Limited Partners' capital contributions.

1.23    "Limited Partner" means any person executing this Agreement or causing the same to be executed as a Limited Partner, as well as any other person acquiring any portion of one or more Units from a Limited Partner and admitted to the Partnership as a substitute Limited Partner.  A Limited Partner shall be considered a "temporary" Limited Partner until such time as the Limited Partner's EB-5 Application has been approved, as set forth in Section 12.14 below.

1.24    "Limited Partner Interests" means the Limited Partners' aggregate eighty percent (80%) equity interests in the Partnership.  The portion of the aggregate Limited Partner Interests held by any individual Limited Partner shall be equal to the number of Units held by such Limited Partner divided by the total number of Units held by all Limited Partners.  By way of example, if the Partnership has issued the maximum 160 Units, a Limited Partner holding one Unit has a one-half of one percent (0.5%) Limited Partner Interest.

1.25    "Limited Partnership Act" means Title 53, Chapter 2 of the Idaho Statutes, also known as the Idaho Uniform Limited Partnership Act, as the same may be amended from time to time.

1.26    "Majority in Interest" means, Limited Partners owning in the aggregate a majority, or any specified higher percentage, of the Units then held by Limited Partners.

1.27    "Partner" means a Limited Partner or General Partner.

1.28   "Partnership" means Quartzburg Gold, LP, an Idaho limited partnership formed on February 3, 2012.

1.29   "Permanent Disability" or "Permanently Disabled".  When used with reference to a specified Person, this shall mean (i) any mental or physical illness, condition or incapacity which prevents the specified Person from performing his or her duties on behalf of the Partnership or any of its Affiliates for a period of 180 substantially consecutive days during any 365-day period, (ii) a determination by an insurer that has issued a disability insurance policy to the Partnership or one or more Limited Partners or the General Partner with respect to a Person that such Person is permanently disabled as defined in such policy, or (iii) the determination by a court of competent jurisdiction that the specified Person is legally incompetent.

1.30   "Person" means an individual, a partnership (general, limited or limited liability), a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or a governmental, quasi-governmental, judicial or regulatory entity or any department, agency or political subdivision thereof.

1.31   "Private Placement Memorandum" or "Offering Statement" or "PPM"   means the offering memorandum utilized by the Partnership to sell Units.

1.32   "Profits and Losses".  Profits and Losses means, for each Fiscal Year, an amount equal to the Partnership's taxable income or loss for such Fiscal Year, determined in accordance with Code Section 703(a) (for this purpose, all items of income, gain, loss, or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or loss), with the following adjustments:

(i)      Any income of the Partnership that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be added to such taxable income or loss;

(ii)     Any expenditures of the Partnership described in Code Section 705(a)(2)(B) or treated as Code Section 705(a)(2)(B) expenditures pursuant to Regulation Section 1.704-l(b)(2)(iv)(i), and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be subtracted from such taxable income or loss;

(iii)    In the event the Gross Asset Value of any Partnership asset is adjusted pursuant to subparagraphs (ii) or (iii) of the definition of "Gross Asset Value," the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses;

(iv)     Gain or loss resulting from any disposition of property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value;

(v)      In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year, computed in accordance with the definition of "Depreciation";

(vi)     To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or Code Section 743(b) is required pursuant to Regulation Section 1.704-l(b)(2)(iv)(m)(4) to be

taken into account in determining Capital Accounts as a result of a Distribution other than in complete liquidation of a Limited Partner's Limited Partner Interest, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) from the disposition of the asset and shall be taken into account for purposes of computing Profits or Losses; and

   (vii) Notwithstanding any other provision of this Section, any items, which are specially allocated pursuant to Section 10.12, shall not be taken into account in computing Profits or Losses.

The amounts of the items of Partnership income, gain, loss or deduction available to be specially allocated pursuant to Section 10 shall be determined by applying rules analogous to those set forth in subparagraphs (i) through (vi) above.

  1.33 "Project Escrow Account".  An account maintained by the Escrow Agent into which Five Hundred Thousand Dollars ($500,000), equal to the purchase price of each Unit, shall be deposited and which shall be disbursed to the Partnership upon USCIS approval of the Limited Partner's EB-5 Application.  Funds deposited in the Project Escrow Account by a Limited Partner shall be treated as Capital Contributions to the Partnership by that Limited Partner, and no funds shall, under any circumstances, be deducted from such Capital Contributions for the purpose of paying offering costs, issuance fees or any other costs not associated with such Capital Contributions.  No interest will be paid to Limited Partners on such escrowed funds prior to the time such funds are released and actually transferred out of the Escrow Account to the Partnership, which may be as late as the funding date of the last ISGC Loan, and any interest earned on these funds while held in the Escrow Account will be deemed a fee paid to the Idaho State Regional Center.  By execution hereof, each Subscriber agrees to be bound to the terms and conditions of the Escrow Agreement to the same extent as if the Subscriber had separately executed the Escrow Agreement.

  1.34 "Projects" means (i) the Yellowjacket Mine, Belshazzar Mine, and Thunder Mountain Mine; (ii) the Monarch Mountain Mine, subject to satisfactory completion of due diligence; and (iii) additional or replacement Projects that are selected by Idaho State Gold Company, approved by the General Partner, and funded with proceeds from the ISGC Loan.  The Projects may be further described in the Private Placement Memorandum.  The General Partner has authority to approve funding of other projects identified by Idaho State Gold Company, either in addition to or replacement of the preceding projects, to the extent appropriate based upon the capital requirements of the listed Projects, the General Partner's ongoing due diligence, and contingencies that may arise in development of the foregoing Projects.

  1.35 "Short-Term Investments" means (i) cash or cash equivalents, (ii) commercial paper rated no lower than "A-1" by Standard & Poor's Rating Services or "P-1" by Moody's Investors Service, Inc., (iii) United States obligations, (iv) state or municipal governmental obligations or money market instruments having equivalent credit ratings to the securities listed in clause (ii) above, (v) certificates of deposit issued by, or other deposit obligations of, commercial banks chartered by the United States or a state thereof or the District of Columbia, each having combined capital and surplus of at least $100,000,000, (vi) overnight repurchase agreements with primary Fed dealers collateralized by direct United States Government obligations, (vii) pooled investment vehicles or accounts that invest only in securities or instruments of the type described in clauses (i) through (vi) above, and (viii) other similar obligations and securities having equivalent credit ratings to the securities listed in clause (ii) above, in each case maturing in one year or less at the time of investment by the Company.

  1.36 "Subscription Agreement" means the Subscription Agreement utilized by the Partnership to sell Units to Limited Partners, including all attachments thereto.

1.37    "Unit" means a unit of a Limited Partner Interest, the acquisition of which shall entitle the holder thereof to the rights and benefits specified in this Agreement.  The Partnership shall issue a minimum of sixty (60) and a maximum of one hundred sixty (160) Units.

1.38    "Unreturned Capital Contribution" means with respect to each Limited Partner the excess, if any, of the cumulative amount of the Capital Contributions made by the Limited Partner (or the Limited Partner's predecessors in interest) over the cumulative amount of distribution made to the Limited Partner pursuant to Section 10.

1.39    "USCIS" means the United States Citizenship and Immigration Services.

2.      **FORMATION.**

The Limited Partners hereby constitute a limited partnership pursuant to the Limited Partnership Act and other applicable laws of the State of Idaho.

3.      **NAME AND PLACE OF BUSINESS.**

The name of the Partnership is "**Quartzburg Gold, LP**" or such other name as the General Partner shall hereafter designate by written notice to the Limited Partners.  Its principal mailing address shall be 1112 West Main Street, Suite 101, Boise ID 83702 USA, Attn: ISR Capital, LLC, or such other location as the General Partner may from time to time designate by notice to the Limited Partners.

4.      **PURPOSE AND SCOPE OF PARTNERSHIP.**

4.1     General.

(1)     The Partnership has been formed for the sole purpose of conducting the Business.  The Partnership shall possess and may exercise all of the powers and privileges granted by the Limited Partnership Act or by any other law or by this Agreement (if not prohibited by the Limited Partnership Act), together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business purposes or activities of the Partnership, as described in the PPM.

(2)     The Partnership has an approved license with the Idaho State Regional Center, LLC, which is a Regional Center, approved by USCIS.  An exemplar model has been approved by USICS for a current geographic area that includes the Projects, to facilitate the filing of EB-5 Applications on behalf of its Limited Partners and their immediate family members.  ISRC intends to expand the geographic area to include other projects.

4.2     Other Business Ventures.  Any General Partner or any officer, director, employee, stockholder or other person holding a legal or beneficial interest in any entity which is a General Partner, may engage or possess an interest in other business ventures of every nature and description, independently or with others, and neither the Partnership nor any Limited Partner shall have any right by virtue of this Agreement in or to such independent ventures or the income or profits derived therefrom; provided that nothing contained in this Section is intended to absolve a General Partner from any liability to the Partnership or the Limited Partners arising as a result of a breach of any material fiduciary obligation owing to the Partnership or any Limited Partner.

5.      **TITLE.**

Title to any property and to any other assets acquired to affect the purposes of the Partnership shall be held in the name of the Partnership. The General Partner shall execute and file in all appropriate locations such documents, if any, as may be necessary to reflect the Partnership's ownership directly or indirectly in such property or assets.

6. **COMMENCEMENT, TERM.**

The Partnership shall be deemed to commence its existence as of the date its Certificate of Limited Partnership is accepted by the Idaho Secretary of State. The term of the Partnership shall continue until December 31, 2041 unless sooner terminated in accordance with the provisions of Section 11 hereof, or as otherwise provided by law.

7. **CAPITAL CONTRIBUTIONS.**

7.1    <u>General Partner</u>.  In consideration of its becoming the General Partner of the Partnership, and undertaking other obligations and duties as herein set forth, the General Partner has been issued the General Partner Interest of twenty percent (20%).

7.2    <u>Limited Partners</u>.  Each Limited Partner shall contribute $500,000 per Unit, in return for which they shall receive the Limited Partnership Interest as noted in <u>Schedule 1</u>.  The total amount of $500,000 per Unit to be contributed by each Limited Partner shall be paid to the Escrow Agent as set forth in the Subscription Agreement and released to the Partnership upon satisfaction of the conditions set forth in the Escrow Agreement.

7.3    <u>No Additional Contributions</u>.  Neither the Limited Partners nor the General Partner are required to contribute additional capital or lend funds to the Partnership.

7.4    <u>Capital Accounts</u>.  The Partnership shall establish for each Partner a Capital Account. Voluntary loans by any Partner shall not be considered contributions to the capital of the Partnership.

7.5    <u>Withdrawal and Return of Capital</u>.  Except upon dissolution of the Partnership (subject to the provisions of Section 11 hereof) or as otherwise expressly set forth in this Agreement, no Limited Partner may withdraw any capital from the Partnership without the consent of the General Partner.  No Limited Partner shall have the right to receive property other than cash, except as may otherwise be specifically provided herein, nor to be paid interest on such Contributions with respect to the period held by the Partnership.

7.6    <u>Interest on General Partner Loans</u>**.**  The General Partner will be entitled to receive interest on any loans it provides to the Partnership equal to a rate of ten percent (10%) per annum, although the General Partner shall have no obligation to advance funds.

8. **RIGHTS AND DUTIES OF THE GENERAL PARTNER.**

8.1    <u>Management of Partnership Business</u>.  The General Partner shall be solely responsible for, and have complete authority and discretion in, the management of the Partnership's business.  The General Partner shall have all of the powers not prohibited to it by the Limited Partnership Act.  The exercise of any power conferred by this Agreement on the General Partner shall constitute the act of and be binding upon the Partnership.

8.2    <u>Specific Rights and Powers</u>.  In addition to any other rights and powers which it may possess under law, but subject to the provisions of Section 4 and Subsection 8.3 below, the General Partner shall have such other rights and powers required for or appropriate to its management of the Partnership's business, which, by way of illustration but not limitation, shall include the following:

(1)    sell, lease, assign, exchange or otherwise transfer or convey Partnership property;

(2)    to borrow money for Partnership purposes and, if security is required therefor, to encumber or subject to any other security device any Partnership property; and to guarantee any indebtedness that is incurred by subsidiary entity or an affiliate of subsidiary entity on behalf of the Partnership either directly or indirectly or to provide an indemnity to such affiliate or subsidiary entity providing a guaranty;

(3)    to enter into any contract of insurance which the General Partner may reasonably deem appropriate for the protection or conservation of Partnership property, or for any other purpose beneficial to the Partnership;

(4)    to employ attorneys, brokers, agents, consultants, accountants and other independent contractors to perform services on behalf of the Partnership, including where appropriate, Affiliates of the General Partner; provided that such services are reasonably necessary or advisable and the compensation therefor is reasonable;

(5)    to make any alterations, improvements and/or repairs which are necessary to maintain Partnership property in good operating condition;

(6)    to bring or defend legal actions in the name of the Partnership, pay, collect, compromise, arbitrate, or otherwise adjust or settle claims or demands of or against the Partnership;

(7)    to establish reasonable reserve funds from Limited Partner Capital Contributions or income derived from the Partnership's operations, in either case to provide for future requirements of any Partnership property for maintenance, repair or replacement, or of the Partnership in connection with its administration;

(8)    to perform or cause to be performed all of the Partnership's obligations under any agreement to which the Partnership is a party;

(9)    to loan funds to the Partnership and charge reasonable interest thereon; and

(10)    to execute, acknowledge and deliver any and all instruments necessary to effectuate any of the foregoing.

Except as otherwise provided herein or by law, the General Partner shall possess the same rights and powers as a General Partner of a limited partnership formed under the laws of the State of Idaho.

8.3    <u>Limitations on General Partner Authority</u>.  Notwithstanding anything to the contrary herein contained and subject to the provisions of Section 4, without in each instance receiving the prior written consent of a Majority in Interest of the Limited Partners, the General Partner shall not have the authority to:

(1)    lend Partnership funds in any materials respect to any person or entity other than Idaho State Gold Company, affiliated company, or other approved company by the General Partner otherwise pursuant to the advancement of the Projects;

(2)    perform any act which would make it impossible to carry on the ordinary business of the Partnership or which would be in contravention of the express terms of this Agreement;

(3)     admit an additional General Partner, or admit a person as a Limited Partner other than as provided herein;

(4)     perform any act that would subject any Limited Partner to liability as a general partner in any jurisdiction; or

(5)     take any action which would result in the Partnership being classified other than as a partnership for federal income tax purposes.

8.4    <u>Liability of General Partner to Limited Partners and Partnership; Indemnification</u>. The General Partner shall be required to devote only so much time and attention to the business affairs of the Partnership as is reasonably necessary or advisable to competently manage such affairs.  Except as otherwise specifically set forth herein, neither the General Partner nor its Affiliates shall be personally liable to any Limited Partner because any taxing authority disallows or adjusts any deduction or credit claimed in a Partnership income tax return, nor for the repayment of capital contributions of the Limited Partners.  The performance of or the omission to perform any act, the effect of which may cause or result in loss or damage to the Partnership, if performed or omitted in good faith and in accordance with the terms of this Agreement, shall not subject the General Partner nor its Affiliates to any personal liability to either the Partnership or any Limited Partners.  The Partnership, its receiver, or trustee shall indemnify and hold harmless the General Partner (including any officer, director or employee of a corporate General Partner) from any claim, loss, expense, liability, action or damage resulting from any such act or omission, including, without limitation, reasonable costs and expenses of litigation and appeal (including reasonable fees and expenses of attorneys engaged by the General Partner in defense of each such act or omission); but the General Partner and its Affiliates shall not be entitled to be indemnified or held harmless due to, or arising from, fraud, bad faith, gross negligence, malfeasance or a material failure to comply with any representation, warranty, covenant, condition or other agreement herein contained, and provided further that any indemnification provided for hereunder shall be fully subordinate to the payment and performance of all obligations.

8.5    <u>Notice Obligation</u>.  The General Partner shall immediately give notice to the Limited Partners of (a) the untruth or incorrectness in any material respect of any representation or warranty made by it or of any material default in its performance of any covenant or other agreement herein contained; (b) a default in the performance of any material obligation of any person to the Partnership or to the Limited Partners which shall have occurred and be continuing under any agreement with the Partnership; and (c) any other notice of a material default received by the Partnership.

8.6    <u>Removal; Resignation</u>.

(1)     The Limited Partners may by vote of Limited Partners holding a two thirds majority interest, without the consent of the General Partner, remove the General Partner as General Partner of the Partnership, solely for "cause."  For purposes of the foregoing, "cause" shall mean, and be limited to, the General Partner having been found, in a final, non-appealable judgment of a court of competent jurisdiction, to have engaged in acts or omissions that constitute gross negligence, willful misconduct or fraud as to the Partnership and/or the Limited Partners that have been material and adverse to the Partnership.

(2)     The General Partner shall automatically be removed as General Partner of the Partnership immediately upon its Bankruptcy.

(3)     Upon removal or resignation of a General Partner, the removed/resigned General Partner shall immediately cease to have any authority to act as a General Partner for the Partnership.  Any of the Partnership funds or other property in the possession or under the control of such removed/resigned General Partner shall immediately be released and transferred to its successor or to the Partnership.  The removed/resigned General Partner shall, as applicable, cooperate in the orderly transition of affairs to its successor.

(4)     The General Partner Interest of the removed General Partner shall automatically be converted to a Limited Partner Interest with the same rights to allocations and distributions as existed prior to removal.

8.7     Election of Successor General Partner.  Within ninety (90) days after the removal or resignation of the General Partner, the Limited Partners shall, by Majority Interest Vote, elect a successor General Partner.  The failure to so elect a successor General Partner shall constitute an Event of Dissolution under Section 11 hereof.

9.     **PARTNER FEES, SALARIES AND EXPENSES.**

9.1     Fees and/or Reimbursements Paid to the General Partner.  The General Partner and/or its Affiliates shall receive such fees, Equity reimbursements, and/or other reimbursements as are as set forth in the PPM.

9.2     Expenses.  Except as otherwise provided herein, the Partnership shall pay all expenses of any kind or nature incurred in connection with the formation, operation and administration of the Partnership.

9.3     Salaries, Drawings and Interest on Capital Accounts.  No Limited Partner shall receive any interest on a capital contribution or any salary, either with respect to any capital contribution, for services rendered on behalf of the Partnership or otherwise in its capacity as a Limited Partner, except as expressly provided elsewhere in this Agreement.

10.     **PROFITS, LOSSES AND DISTRIBUTIONS.**

10.1     Allocation of Profit and Loss.  Except as otherwise provided in this Section 10, Profits and Losses for any Fiscal Year shall be allocated to the Partners:

(1)     First, in the case of Profits, to any Partner in an amount up to, but not exceeding, the aggregate amount of Losses previously allocated to that Partner in accordance with Section 10.2; and

(2)     Second, to the Partners in proportion to their respective Interests.

10.2     Limitation on Allocation of Losses.  The Losses allocated pursuant to Section 10.1(2) shall not exceed the maximum amount of Losses that can be so allocated without causing any Partner to have an Adjusted Capital Account Deficit (determined after all cash distributions for the fiscal period) at the end of the fiscal period for which the allocation relates.  All Losses in excess of the limitation set forth in the preceding sentence shall be allocated among those Partners that will not have an Adjusted Capital Account Deficit at the end of the fiscal period in the ratio of their relative Interests.

10.3     Distribution of Cash Flow.  The General Partner shall have the sole authority to determine when Cash Flow is available for distribution among the Partners.  Once a determination is made that such a distribution is in order, the General Partner shall distribute such Cash Flow to the Partners in proportion to their respective Interests. The General Partner intends to retain all Cash Flow resulting from the repayment of the principal amount of the ISGC Loans so that such money is available to fund the possible exercise of the Call Options pursuant to Section 12.11,

except to the extent required to pay tax distributions pursuant to Section 10.10 below.  Notwithstanding any other provision of this Agreement to the contrary, no cash distributions shall be made to the General Partner, other than distributions pursuant to Section 10.10 below, prior to the time at which either (i) the Partnership has exercised the Call Option with respect to all outstanding Interests held by Limited Partners, or (ii) each Limited Partner has received cumulative distributions from the Partnership equal to the amount of such Limited Partner's Capital Contribution.

10.4    Liquidating Distributions.   The proceeds resulting from the liquidation of the Partnership property pursuant to Section 12 shall be distributed and applied in the following order of priority:

(1)    To the payment of debts and liabilities of the Partnership, including all expenses of the Partnership incident to any such liquidation and all loans or any other debts and liabilities of the Partnership to the Partners or their Affiliates;

(2)    To the establishment of any reserves which the liquidating trustee deems reasonably necessary for contingent, unmatured or unforeseen liabilities or obligations of the Partnership; and

(3)    To the Partners in accordance with the positive balances in their Capital Accounts, after giving effect to all contributions, distributions and allocations for all periods.

10.5    Nonrecourse.   Each Limited Partner shall look solely to the assets of the Partnership for all distributions from the Partnership, the repayment of his Capital Contributions, and the repayment of any loans previously made to the Partnership when all such payments are due hereunder, and shall have no recourse, upon dissolution or otherwise, against any General Partner, its affiliates, or Limited Partner.

10.6    Change in Interest.   If any Limited Partner's Interest is reduced, but not eliminated, because of the admission of new Limited Partners or otherwise, such Limited Partner's interest in the unrealized receivables of the Partnership as defined in Section 751 of the Code that were owned by the Partnership while such Person was a Limited Partner shall not be reduced, but shall be retained by the Limited Partner so long as the Limited Partner holds an Interest and so long as the Partnership has an interest in such unrealized receivables.

10.7    Authority of General Partner to Vary Allocations to Preserve and Protect Limited Partners' Intent. It is the intent of the Partners that each Partner's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with this Section to the fullest extent permitted by Section 704(b) of the Code.  In order to preserve and protect the determinations and allocations provided for in this Section 10, the General Partner is authorized and directed to allocate income, gain, loss, deduction, or credit (or item thereof) arising in any year differently than otherwise provided for in this Section to the extent that allocating income, gain, loss, deduction or credit (or item thereof) in the manner provided for in this Section would cause the determination and allocation of each Partner's distributive share of income, gain, loss, deduction or credit (or item thereof) to not be permitted by Section 704(b) of the Code and Treasury Regulations promulgated thereunder.  Any new allocation (the "**New Allocation**") made pursuant to this Section shall be deemed to be a complete substitute for any allocation otherwise provided for in this Section, and no amendment of this Agreement or approval of any Limited Partner shall be required.

(1)    In making any New Allocation under Section 10.7, the General Partner is authorized to act only after having been advised by the accountants to the Partnership that, under Section 704(b) of the Code and the Treasury Regulations thereunder, (i) the New Allocation is necessary, and (ii) the New Allocation is the minimum

modification of the allocations otherwise provided for in this Section necessary in order to assure that, either in the then current year or in any preceding year, each Partner's distributive share of income, gain, loss, deduction, or credit (or item thereof) is determined and allocated in accordance with this Section to the fullest extent permitted by Section 704(b) of the Code and the Treasury Regulations thereunder.

(2)     If the General Partner is required by Section 10.7 to make any New Allocation in a manner less favorable to a Partner than is otherwise provided for in this Section, then the General Partner is authorized and directed, insofar as it is advised by the accountants to the Partnership that it is permitted by Section 704(b) of the Code, to allocate income, gain, loss, deduction, or credit (or item thereof) arising in later years in such a manner so as to bring the allocations of income, gain, loss, deduction, or credit (or item thereof) to the Partners as near as possible to the allocations thereof otherwise contemplated by this Section 10.  Furthermore, in the event that any New Allocation requires repayment by a Partner of any distribution made during any tax year, the Partner shall be required to refund to the Partnership only amounts in excess of the net tax cost to the Partner based upon the original allocation.   For example, if a Partner's tax rate was twenty percent (20%) and the distribution to such Partner was $100.00, the Partner would only be required to refund $80.00 of the distribution.

(3)     New Allocations made by the General Partner under Section 10.7 in reliance upon the advice of the accountants to the Partnership shall be deemed to be made pursuant to the fiduciary obligation of the General Partner to the Partnership and the Limited Partners, and no such allocation shall give rise to any claim or cause of action by any Limited Partner.

10.8   <u>Withholding Taxes with Respect to Limited Partners</u>.  The Partnership shall comply with any withholding requirements under federal, state, local and foreign law and shall remit any amounts withheld to, and file required forms with, the applicable jurisdiction. All amounts withheld from Partnership revenues or distributions by or for the Partnership pursuant to the Code or any provision of any federal, state, local or foreign law, and any taxes, fees or assessments levied upon the Partnership, shall be treated for purposes of this Section as having been distributed to those Limited Partners who received tax credits with respect to the withheld amounts, or whose identity or status caused the withholding obligations, taxes, fees or assessments to be incurred.  If the amount withheld was not withheld from the affected Limited Partner's actual share of cash available for distribution, the General Partner on behalf of the Partnership may, at its opinion (a) require such Limited Partner to reimburse the Partnership for such withholding or (b) reduce any subsequent distributions to which such Limited Partner is entitled by the amount of such withholding. Each Limited Partner agrees to furnish the Partnership with such representations and forms as the General Partner shall reasonably request to assist it in determining the extent of, and in fulfilling, the Partnership's withholding obligations, if any. As soon as practicable after becoming aware that any withholding requirement may apply to a Limited Partner, the General Partner shall advise the Limited Partner of such requirement and the anticipated effect thereof.  Each Limited Partner shall pay or reimburse to the Partnership all identifiable costs or expenses of the Partnership caused by or resulting from withholding taxes with respect to such Limited Partner.

10.9   <u>Allocation Following Transfer of Interest.</u>  Except as otherwise provided herein, in any year in which a Partner transfers all or any portion of an Interest to any person who, during such year, is admitted as a substitute Partner, the share of profits, losses and distributable Cash Flow allocated to or attributable to the Interest sold, assigned or transferred, shall be divided between the assignor and the assignee on the basis of the number of days in such year before, and the number of days on or after, the execution by the assignee of this Agreement; provided, however, that the assignor and the assignee may by agreement make special provisions for the allocation of items of income, profit, gain, loss, deduction or credit as may from time to time be permitted under the Code, and for the distribution of Cash Flow, but such agreement shall be binding as to the Partnership only after it shall have received notice thereof from the assignor and assignee.

10.10   Tax Distributions.   The General Partner shall make good faith efforts to cause the Partnership to distribute to all Partners within ninety (90) days after the close of each fiscal period of the Partnership in accordance with Section 10.3 above, distributions which together with the other distributions to Partners made with respect to such fiscal period equal to at least thirty-five percent (35%) of the Partners' respective anticipated allocation of taxable items pursuant to Section 10.1 above, subject to an increase if federal income tax rates increase for the highest marginal bracket.

11.   **SALE, DISSOLUTION AND LIQUIDATION.**

11.1   Dissolution of Company. Subject to the provisions of Section 4, the Partnership shall be dissolved on the earlier of the expiration of the term of the Partnership, or upon:

(1)   The resignation or other withdrawal of a General Partner, unless the business of the Partnership shall be continued in the same or reconstituted form and, if necessary, another Person selected as a successor General Partner pursuant to Section 8.7 or 14 hereof.

(2)   The bankruptcy, death, dissolution or adjudication of incompetency of a General Partner who is at that time the sole General Partner;

(3)   The passage of 90 days after the sale or other disposition of all the Partnership property or, in the event of an installment sale of the Partnership property, after the final payment is received;

(4)   Subject to the second sentence of Section 12.3, by the determination of the General Partner with the prior written consent of the Majority in Interest of the Limited Partners;

(5)   The sale or other disposition by the Partnership of all or substantially all of its property, unless the Partnership, as part of the consideration for any such sale or other disposition acquires a mortgage or lease on or security interest in all or substantially all of such property, in which case the Partnership shall be dissolved following the sale or other disposition of its entire interest in such mortgage, lease or security interest; or

(6)   Any other event causing the dissolution of the Partnership under the laws of the State of Idaho.

11.2   Winding Up and Distribution.

(1)   Except as otherwise expressly permitted under this Agreement, upon the dissolution of the Partnership, the Partnership shall be liquidated by a liquidating trustee or trustees who shall be (a) any remaining General Partner(s), or if there be none, (b) a person or persons designed by (1) a Majority in Interest of the Limited Partners, or (2) if they are unable to agree, by the Partnership's accountants.  In carrying out the liquidation of the Partnership, the liquidating trustee shall have all of the rights and powers of a General Partner hereunder.

(2)   A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of the Partnership's liabilities so as to enable the liquidating trustee to minimize the normal losses attendant to liquidation.  The operations of the Partnership shall continue during such liquidation solely for the purpose of winding up the Partnership's business.  Upon completion of the liquidation each of the Limited Partners shall be furnished with a statement setting forth the assets and liabilities of the Partnership as of the date of complete liquidation.  Upon approval of this statement by a Majority in Interest of the Limited Partners, the liquidating trustee

shall cause a certificate of cancellation of the Partnership to be duly prepared, executed and filed causing the dissolution of the Partnership under the laws of the State of Idaho.  Nothing herein shall be construed as a limitation upon or termination of any of the rights of the Limited Partners during or following any liquidation.

12.   **LIMITED PARTNERS.**

12.1   <u>Admission</u>.  The General Partner is authorized to admit Limited Partners to the Partnership.

12.2   <u>Limitation on Limited Partner Liabilities</u>.  No Limited Partner will be subject to assessment nor be personally liable for any of the debts of the Partnership or any of the losses thereof beyond the amount committed by him to be contributed to the capital of the Partnership; provided, that a Limited Partner receiving a distribution in return, in whole or in part, of his capital contribution shall be liable to the Partnership for any sum, not in excess of such amount returned, plus interest thereon, necessary to discharge liabilities to any or all creditors of the Partnership who extend credit or whose claims arise before any such distribution is made.

12.3   <u>No Control of Business or Right to Act for Company</u>.  A Limited Partner shall take no part in the management, conduct or control of the business of the Partnership and shall have no right or authority to act for or to bind the Partnership, except as otherwise set forth in this Agreement.  Limited Partners shall have all rights expressly granted to limited partners pursuant to the Limited Partnership Act.

12.4   <u>No Priority</u>.  No Limited Partner shall have priority over any other Limited Partner either as to the return of his original contribution to the capital of the Partnership or as to distributions.

12.5   <u>Registered Holders</u>.  Upon the admission of a Limited Partner, his address and Limited Partnership Interest shall be registered on the records of the Partnership maintained at its principal office and inserted in an amended and updated Schedule 1 hereto.  Notwithstanding anything in this Agreement apparently to the contrary, the Partnership shall refuse to register any transfer of Units not made in accordance with the provisions of Regulation S under the Act, pursuant to a registration under the Act, or pursuant to an available exemption from registration.

12.6   <u>Death or Incompetency</u>.  Upon the death or legal incompetence of an individual Limited Partner (including a substituted Limited Partner), the legally authorized personal representative of such individual shall have all of the rights of a Limited Partner for the purpose of settling or managing such individual's estate and shall have such power as such individual shall have possessed to make a transfer of such individual's Limited Company Interest in accordance with the terms of Section 13 and to join with any assignee in making  application to substitute such assignee as a Limited Partner.

12.7   <u>Other Events</u>.  Upon the bankruptcy or insolvency of any Limited Partner, or the dissolution or other cessation to exist as a legal entity of any Limited Partner which is not an individual, the authorized representative of such individual or entity shall have all of the rights of a Limited Partner for the purpose of effecting the orderly winding up and dissolution of the business of such entity and such power as such individual or entity possessed to make an assignment of its Limited Partnership Interest in accordance with the terms of Section 13 and to join with any assignee in making application to substitute such assignee as a Limited Partner.

12.8   <u>Withdrawal of Limited Partners</u>.  No Limited Partner may voluntarily withdraw or resign as a Limited Partner of the Partnership prior to the dissolution and winding up of the Partnership except as expressly set forth in this Section 12 without the General Partner's prior written consent.  Prior to the time a Limited Partner's EB-5 Application is approved, a Limited Partner may withdraw from the Partnership by written notice to the General

Partner..  Promptly after receipt of such request, the Partnership shall cancel the Limited Partner's Interest and instruct the Escrow Agent to return to such Limited Partner his $500,000 Capital Contribution.

12.9   Nature of Limited Partners' Interest.  Limited Partner Interests in the Partnership shall be personal property for all purposes. No Limited Partner or successor, representative or assign, shall have any right, title or interest in specific Company property.

12.10   Timing of Admission.  An investor shall be admitted as Limited Partner upon the release of such investor's $500,000 capital contribution to the Partnership pursuant to the Escrow Agreement, either as a result of the USCIS's approval of the investor's I-526 petition or the express written consent of the investor to release such investor's capital contribution prior to such approval.  The General Partner may unilaterally amend Schedule A to reflect the admission or withdrawal of any Limited Partner and to reflect the adjustment in other Limited Partner's Ownership Percentages resulting from same.  An investor may be terminated as a Limited Partner and such Limited Partner's  $500,000 capital contribution returned if the investor's I-526 petition is approved by USCIS and his or her capital contribution is released to the Partnership pursuant to the Escrow Agreement, but the investor is subsequently denied an immigrant visa at the consular interview; provided, however, that the return of the Limited Partner's capital contribution under such conditions will be subject to the Partnership having sufficient profits or other cash available for such purpose.

12.11   Call Option to Repurchase Limited Partner Units.

(1)   General.  The Partnership shall have an option ("**Call Option**"), but not an obligation, to purchase the entire Interest owned by a Limited Partner, or previously owned by a Limited Partner and subsequently transferred by such Limited Partner to a transferee permitted pursuant to Section 13, from such Limited Partner or such Limited Partner's permitted transferee (each, a "**Seller**"), on condition that such Call Option may not be exercised prior to an individual Seller's removal of conditions on his or her permanent resident status by USCIS so that such individual Seller's capital contribution shall remain invested in the Partnership for the full statutory period required to remove such conditions. Subject to the above restriction, the Partnership may exercise the Call Option at any time by delivering written notice (a "**Repurchase Notice**") to the Seller of its election to purchase.  Upon delivery of a Repurchase Notice to a Limited Partner, the Partnership shall be obligated to purchase, and each Seller shall be obligated to sell, the Interest, at a purchase price equal to the Applicable Call Option Price.  The Applicable Call Option Price shall be (A) in the case of a Limited Partner who has elected pursuant to Section 12.11(2) below to have the Call Option purchase price payable in gold, the number of ounces of gold set forth in Section 12.11(2), and (B) in the case of a Limited Partner who has not so elected, $550,000.[1]

(2)   Option For Alternate Repurchase Price.  A Limited Partner may elect, by written notice to the General Partner given within thirty (30) days of receiving notice from the General Partner of its intention to exercise the Call Option, to have the Call Option's purchase price paid in gold.  In the event the General Partner exercises its Call Option and a Limited Partner has elected to receive payment in gold, the purchase price for such Interest shall be four hundred (400)[1] ounces of gold (99% purity), provided that if the fair market value (defined as the closing price of gold on the New York Mercantile Exchange the day immediately preceding the transfer) of such gold is less than $550,000[1] as of the date the Call Option is exercised, the Call Option price shall be such greater number of ounces of gold (99% purity) so that the market value of such gold on such date is $550,000[1].

---

1 Certain investors approved by the General Partner who were over-subscribed on the Phase I Project shall be entitled to elect a Call Option Price pursuant to Sections 12.11(1) and (2) of either (i) five hundred (500) ounces of gold or (ii) $500,000 cash.

(3)     No Guaranteed Redemption.  For the avoidance of doubt, there is no guaranteed redemption or repurchase of a Limited Partner's Interest and the General Partner is under no obligation to exercise the Call Option. The Limited Partners acknowledge that the Partnership's ability to exercise the Call Option and redeem the Interest of a Limited Partner is entirely dependent upon the repayment of the ISGC Loan by Idaho State Gold Company.  The ability of Idaho State Gold Company to repay the ISGC Loan, in turn, is entirely dependent upon repayment of the Mining Company Loans and the success of the Projects.  Subject to the foregoing, however, the General Partner will strive to be in a position, to the extent the Mining Projects are successful and the ISGC Loan is repaid, to exercise the Call Option within four and one-half (4.5) years after the date of the first Mining Company Loan, with respect to Limited Partners whose subscription documents and funds are received on or before July 15, 2012, and within five (5) years after the date of the first Mining Company Loan, with respect to Limited Partners subscribing after such date. Each Limited Partner specifically acknowledges having reviewed the "Risk Factor" section of the Offering Memorandum, which describes certain risks affecting the Limited Partner's investment in the Partnership.

12.12   Rights of a Representative.  Upon the death, Permanent Disability, incompetence or Bankruptcy of an individual who is a Limited Partner, his personal representative, guardian, trustee or Person serving in a similar capacity, as the case may be, shall have all of the rights of a Limited Partner for the purpose of settling or managing his estate, and such power as the decedent, incompetent, or bankrupt possessed to constitute a successor as an Assignee and to join with such Assignee in making application under this Section to substitute such Assignee as a Limited Partner.  Upon the adjudication of Bankruptcy, dissolution or other cessation of existence as a legal entity of a Limited Partner which is not an individual, the authorized representative of such entity shall have all of the rights of a Limited Partner for the purpose of effecting the orderly winding-up and disposition of the business of such entity and such power as such entity possessed to constitute a successor as an Assignee and to join with such Assignee in making application to substitute such Assignee as a Limited Partner.  However, such representative or trustee shall not, by virtue of that capacity alone, have the right to become a substituted Limited Partner in the place of his predecessor in interest unless the conditions of Section 13 are satisfied.

13.     **TRANSFER OF LIMITED PARTNER INTERESTS.**

13.1   Conditions Precedent to Transfer.  No Limited Partner shall have the right to sell or assign all or any part of such Limited Partner's Interest except by reason of death, unless (a) such assignment is effected by written instrument in form and substance acceptable to counsel for the Partnership, stating that the assignee intends to be substituted or admitted as a Limited Partner and accepts and adopts all of the terms and provisions of this Agreement, as the same may have been amended, and providing for the payment of all reasonable expenses incurred by the Partnership in connection with such substitution or admission, including but not limited to the cost of preparing the necessary amendment to this Agreement; (b) the General Partner consents to such assignment, which consent shall not be unreasonably withheld; and (c) if requested by the General Partner, the transferring Limited Partner delivers to the General Partner an opinion of acceptable legal counsel stating that the substitution or admission is exempt from registration and qualification under the Act and any applicable state securities laws. The General Partner may reasonably refuse to consent to any transfer or assignment of a Partnership Interest (i) to a minor or person adjudged incompetent; (ii) under circumstances which would result in the termination of the Partnership under the Code; or (iii) which would result in a breach or default by the Partnership under any material contracts or agreements.

13.2   Legend.  Any certificate representing a Limited Partnership Interest shall bear on the face thereof legends substantially in the following form:

"THIS SECURITY HAS NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION UNDER THE SECURITIES ACT OF 1933, AS AMENDED

(THE "ACT"), IN RELIANCE UPON THE EXEMPTIONS FROM REGISTRATION PROVIDED IN SECTIONS 3(B) AND 4(2) OF THE ACT AND IN REGULATION S PROMULGATED UNDER THE ACT, NOR WITH ANY STATE SECURITIES REGULATORY AUTHORITY IN RELIANCE UPON PARTICULAR STATUTORY TRANSACTIONAL EXEMPTIONS.   THIS SECURITY MAY NOT BE SOLD OR TRANSFERRED WITHOUT PRIOR RECEIPT OF AN OPINION OF COUNSEL FOR THE GENERAL PARTNER TO THE EFFECT THAT SUCH PROPOSED SALE OR OTHER TRANSFER DOES NOT AFFECT THE EXEMPT STATUS OF THE ORIGINAL ISSUANCE AND SALE OF THIS SECURITY AND IS IN COMPLIANCE WITH ALL APPLICABLE STATE AND FEDERAL SECURITIES LAWS.   THIS SECURITY IS OFFERED ONLY OUTSIDE OF THE UNITED STATES TO NON-US PERSONS, PURSUANT TO THE PROVISIONS OF REGULATION S OF THE ACT."

13.3   <u>Mechanics of Substitution or Admission</u>. Any substitution or admission of a Limited Partner shall become effective as of the last day of the calendar month in which all the conditions of such substitution or admission as specified in Section 13.1 shall have been satisfied.  Any person admitted as a substitute or additional Limited Partner pursuant to this Section shall (except as herein otherwise expressly provided) be a Limited Partner for all purposes of this Agreement to the extent of the Interest acquired by such person.

13.4   <u>Prohibited Assignments</u>.  Any purported assignment of a Limited Partnership Interest otherwise than in accordance with this Section shall be of no effect as between the Partnership and the purported assignee and shall be unenforceable as against the Partnership or the General Partner.  The General Partner shall not be charged with actual or constructive notice of any such purported assignment and is expressly prohibited from making allocations and distributions hereunder in accordance with any such purported assignment.

13.5   <u>General Partner Purchase</u>. Nothing in this Agreement shall be deemed to preclude the purchase by a General Partner of an interest as a Limited Partner and the substitution or admission of a General Partner as a Limited Partner in connection therewith.  Such substitution or admission shall be subject, however, to the restrictions and conditions imposed by Section 13.1 hereof.

14.   **TRANSFER OF GENERAL PARTNER'S INTEREST.**

A transfer by a General Partner of any or all of its General Partner interest (including a pledge by the General Partner to secure indebtedness for which the Partnership is liable) shall be a permitted transfer, a transferor General Partner shall have authority to cause its transferee to be admitted as a General Partner and, notwithstanding any other provision of this Agreement apparently to the contrary, upon any foreclosure of a pledge made by a General Partner, the successor to the pledging General Partner shall automatically be admitted as a substituted General Partner without more unless otherwise stipulated in writing by the foreclosing party in connection with such foreclosure.  Upon any transfer of a General Partner interest made other than in connection with the foreclosure of a pledge or other than to a General Partner or a transferee contemporaneously admitted by the transferor General Partner as a General Partner, the transferring General Partner's interest shall, to the extent subject to the transfer, become a Limited Partner interest unless and until the holder of such interest is admitted as a substituted General Partner.  Any admission of a substituted General Partner shall be set forth in a writing executed by the transferor General Partner or any other General Partner and the substituted General Partner, in which the substituted General Partner shall agree in writing to be bound, as a General Partner, by the terms and provisions of this Agreement as though the original holder of the interest held as a substituted General Partner.  Any substituted General Partner shall execute and file with the Secretary of State any amendment to the Certificate of Limited Partnership of the Partnership required by the Act.

15.    **MISCELLANEOUS FINANCIAL AND ACCOUNTING MATTERS.**

15.1    <u>Availability of Financial Records</u>.  At all times during the existence of the Partnership, the General Partner shall keep or cause to be kept accurate and complete books of account in accordance with generally accepted accounting principles applied in a consistent manner, which shall reflect all Company transactions (including capital contributions, income, expense, gain, loss and distributions) and shall be appropriate and adequate for the Partnership's business.  Such books shall be maintained at the principal place of business of the Partnership.  Any Limited Partner or his duly authorized representative shall have the right, at his expense, to inspect and copy from such books and documents during normal business hours upon reasonable notice. "Equity" may mean approximate capital investment into projects, deemed value of project, deemed value based on net present value of known mineral resource, appraised value, accrued return on previous capital investment and inflation, and/or value of data acquired by developer which is described in the PPM, business plan, and/or proforma.

15.2    <u>Financial Reports</u>.  As soon as practicable after the close of the fiscal year of the Partnership, and in any event within 90 days thereafter, the General Partner shall deliver to each Limited Partner a financial report of the Partnership for such period, including:  (a) a balance sheet, (b) a profit and loss statement, (c) a statement showing the source and amount of distributions made to the Limited Partners and the allocation to each Limited Partner of Company income, gain, loss, deductions, credits and items of tax preference, and (d) full disclosure of such other matters as may be material to the financial operations of the Partnership or to an understanding by the Limited Partners of such operations.  Such statements need not be audited but shall be on a basis consistent with the Partnership's method of accounting and shall be certified by the General Partner as complete and correct, subject to changes resulting from year-end adjustments.

15.3    <u>Independent Audit</u>.  Upon the written request of any Limited Partner, the financial records of the Partnership shall be audited as of the close of any fiscal year, at the expense of the requesting Limited Partner, by such reputable firm of independent certified public accountants as the General Partner shall designate.  If Limited Partners owning more than 50% of all Limited Partnership Interests make such request, the audit shall be conducted at the Partnership's expense.

15.4    <u>Accounting Decisions</u>.  All decisions as to accounting principles and procedures, except as specifically provided to the contrary herein, shall be made by the General Partner in accordance with the recommendations of the Partnership's accountants.

15.5    <u>Taxable and Fiscal Year</u>.  The Partnership's taxable and fiscal years shall be selected by the General Partner so as to be advantageous to the Partnership.

15.6    <u>Income Tax Information</u>.  Each Limited Partner shall be provided with a copy of the Partnership's annual income tax return, and such additional data as is necessary to adequately disclose each class of income, gain, loss or deduction acquired or incurred by the Partnership during the preceding taxable year and each Limited Partner's distributive share thereof.  Such return and data shall be furnished as soon as practicable after the close of the Partnership's taxable year, and at least one week prior to the due date (without extension) of the filing of such return with the Internal Revenue Service.

15.7    <u>Maintenance of Cash Assets</u>.  All cash funds of the Partnership from whatever source received shall be invested in Short-Term Investments.  All withdrawals from any account in which such Short-Term Investments are held or sale of any such investment shall be made upon the signature of the General Partner, or by such other individual(s) as may be authorized in writing by the General Partner.

15.8    Basis Election.  Upon the transfer of a Limited Partnership Interest, or a distribution of Partnership property, the Partnership shall have the right, but not the obligation, to elect pursuant to Section 754 of the Code to adjust the basis of Partnership property as allowed by Section 734(b) and 743(b) of the Code; provided, however, that if such an election is made, the Partnership shall not be required to make (and shall not be obligated to bear the expense of making) any accounting adjustments resulting from such election in the information supplied to any Limited Partner.

16.    **AMENDMENTS.**

16.1    Procedure for Amendment.  Subject to the terms of Articles 16 and 17 hereof, this Agreement may be amended only upon the written consent of the General Partner and a two-thirds majority in interest of the Limited Partners; provided, that this Agreement shall not be amended so as to reduce the allocations to the Limited Partners provided in Section 10 hereof unless such reduction has first been consented to in writing by all of the Limited Partners.  The General Partner may amend this Agreement without the written consent of the Limited Partners: (a) if advised by its counsel that such amendment is required to avoid having the Partnership treated as an association taxable as a corporation; and/or if after ten days written notice to the Limited Partners of a proposed amendment, the Partnership has not received written objections from a Majority in Interest of the Limited Partners, or (b) for the reasons set forth in Section 16.2 (1) or (2) hereof.

16.2    Reasons for Certain Amendments.  This Agreement shall be amended whenever:

(1)    There is a change in the name of the Partnership or the amount or character of the contribution of a Limited Partner;

(2)    A person is substituted or otherwise admitted as a Limited Partner;

(3)    A person is admitted as a General Partner;

(4)    There is a change in the character of the business of the Partnership;

(5)    The Agreement contains a materially inaccurate statement;

(6)    A time is fixed for dissolution of the Partnership or the return of contributions in contravention to the time specified in this Agreement;

(7)    There is a change in any right to vote given by this Agreement to a Limited Partner on matters affecting the basic nature of the Partnership, or General Partner chooses to.

17.    **POWER OF ATTORNEY.**

17.1    Description.  Each Limited Partner hereby irrevocably constitutes and appoints the General Partner, with full power of substitution, as his true and lawful attorney-in-fact on his behalf and in his name, place and stead, to make, execute, consent to, swear to, acknowledge, publish, record and/or file the following:

(1)    A Certificate of Limited Partnership, a Fictitious Name Registration and any other certificate or instrument which may be required to be filed by the Partnership or the Limited Partners under the laws of any jurisdiction, to the extent that the General Partner may reasonably deem such filing to be appropriate, including any and all amendments or modifications thereto;

(2)     Such instruments as may be required to effectuate the dissolution and termination of the Partnership pursuant to the provisions of this Agreement;

(3)     Any and all consents for the admission of substituted Limited Partners, pursuant to the terms of this Agreement; and

(4)     Such other instruments as the General Partner may reasonably deem appropriate to fully carry out the provisions of this Agreement in accordance with its terms, including the pledge of Partnership Interests to secure bridge or mezzanine financing obtained by the Partnership.

17.2   Characteristics of Power.  The grant of the foregoing power of attorney is coupled with an interest; shall be irrevocable and binding on any assignee of all or any part of a Limited Partnership Interest; shall survive the death, legal incapacity, bankruptcy or insolvency of any Limited Partner during the term hereof; and shall survive the delivery of any assignment by any Limited Partner of the whole or any portion of his Limited Partnership Interest; and any assignee of a Limited Partner hereby constitutes and appoints the General Partner as his attorney in the same manner and force and for the same purposes as does the assignor.

17.3   Limitations of Power of Attorney.  No document or amendment executed by the General Partner pursuant to this Section shall, in the absence of the prior consent of all of the Limited Partners, (a) reduce the obligations of the General Partner, (b) affect the rights or restrictions regarding the assignability of Limited Company Interests, (c) modify the term of the Partnership, (d) amend this Section, or (e) reduce the rights or interests or enlarge the obligations of the Limited Partners.  The General Partner shall promptly notify the Limited Partners of any documents or amendments executed pursuant to this Section.

18.     **MEETINGS; MEANS OF VOTING.**

18.1   Meetings.  Meetings of the Limited Partners shall be called by the General Partner at its discretion, or whenever requested in writing to do so by Limited Partners owning 75% or more of the Limited Partnership Interests (whether or not held by investors affiliated or unaffiliated with the General Partner).  The call shall state the reason for the meeting, agenda, and attendees invited.  Notice of any such meeting shall be delivered to all Limited Partners in the manner prescribed in Section 20.2 not less than ten (10) days or more than sixty (60) days prior to the meeting.  Meetings shall be held in a location at General Partner's discretion.  Limited Partners unable to personally attend meetings shall be permitted to take part via telephone.

18.2   Record Date.  For the purpose of determining the Limited Partners entitled to vote at any meeting of the Partnership, the General Partner or the Limited Partners requesting such meeting may fix in advance a record date for any such determination of Limited Partners.  Such date shall not be more than 50 days nor less than 10 days before any such meeting.

18.3   Proxies.  A Limited Partner may authorize any person to act for him by proxy on all matters in which he is entitled to participate or vote.  Every proxy must be signed by the Limited Partner or his attorney-in-fact.  No proxy shall be valid after the expiration of 11 months from the date thereof unless otherwise provided in the proxy.  Every proxy shall be revocable at the pleasure of the Limited Partner executing it.

18.4   Conduct of Meetings.  Each meeting of the Limited Partners shall be conducted by the General Partner or such other person(s) as it shall appoint and pursuant to rules of conduct as it shall reasonably deem appropriate.

18.5    Quorum for Meetings.  There shall be deemed to be a quorum at any meeting of the Limited Partners at which the voting power of the Limited Partners attending such meeting plus the voting power exercised by Limited Partners who have submitted to the General Partner effective proxies or written consents to action at such meeting constitutes a Majority in Interest of such Limited Partners.

19.    **WITHDRAWALS.**

A Limited Partner may not withdraw from the Partnership except as expressly set forth in this Agreement unless the General Partner consents to such withdrawal, which consent may be withheld in the General Partner's sole discretion.  All expenses incurred by the Partnership in connection with such withdrawal shall be paid for by the withdrawing Limited Partner.

20.    **MISCELLANEOUS.**

20.1    Copies of Documents.  Promptly upon the execution and delivery of this Agreement, the General Partner shall deliver to each Limited Partner a conformed copy of this Agreement and of the Certificate (in the form in which it has been filed).

20.2    Notices.  Any notice, payment, demand, offer or other communication required or permitted to be given by any provision of this Agreement shall be deemed to have been delivered and given for all purposes (a) if personally delivered, or (b) whether or not actually received, if sent by registered or certified mail, postage prepaid, addressed as follows:

(1)    if to the Partnership, at the mailing address of any General Partner;

(2)    if to the General Partner, at the address of such General Partner set forth in Schedule 1 hereto or such other address as such General Partner may designate by notice to the other Limited Partners; and

(3)    if to a Limited Partner, at the address of such Limited Partner set forth in Schedule 1 hereto or such other address as such Limited Partner may designate by notice to the Partnership.

All notices except notices of change of address shall be deemed given when mailed, and notices of change of address shall be deemed given when received.

20.3    Arbitration.  Any dispute, controversy or claim arising out of or in connection with, or relating to, this Agreement or any breach or alleged breach hereof, except allegations of violations of federal or state securities laws, shall, with the consent of the General Partner (which must be given, if at all, in writing and within ten days of the date such matter matures), be submitted to and settled by arbitration in the State of Idaho, pursuant to the rules then in effect of the American Arbitration Association (or at any other place or under any other form of arbitration mutually acceptable to the parties so involved), with venue in Boise, Idaho.  Any award rendered shall be final and conclusive upon the parties, and a judgment thereon may be entered in the highest court of the forum, state or federal, having jurisdiction.  The expenses of the arbitration shall be borne equally by the parties thereto provided that each party shall pay for and bear the cost of its own experts, gathering of evidence and counsel's fees, except that in the discretion of the arbitrator, any award may include the cost of the party's counsel fees if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or that such matter is frivolous.

20.4   <u>Remedies; Specific Performance</u>.  The Partnership and the Limited Partners shall be entitled to all available legal and equitable remedies against each other, including specific performance of the obligations to make Capital Contributions on the terms set forth herein, and recovery of all damages or losses of the Partnership caused by any Limited Partner's default (including, without limitation, attorney's fees and costs paid or incurred in any legal or equitable action).

20.5   <u>Severability</u>.  Each provision hereof is intended to be severable, and the invalidity or illegality of any portion of this Agreement shall not affect the validity or legality of the remainder hereof.

20.6   <u>Captions</u>.  Paragraph captions contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or extend, or describe the scope of this Agreement or the intent of any provision hereof.

20.7   <u>Person or Gender</u>.  The masculine gender shall include the feminine and neuter genders, the singular shall include the plural, and the word "Person" shall include an individual, corporation, trust, partnership or other form of association.

20.8   <u>Binding Agreement</u>.  Subject to the restrictions on assignment herein contained, the terms and provisions of this Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, personal representatives, estates, heirs and legatees of the respective Limited Partners.

20.9   <u>Applicable Law</u>.  Notwithstanding the place where this Agreement may be executed by any of the parties hereto, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the State of Idaho, excluding its conflict of laws principles, as now adopted or as may hereafter be amended and same shall govern the Partnership aspects of this Agreement.

20.10   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement of the parties hereto with respect to the matters set forth herein and supersedes any prior understanding or agreement, oral or written, with respect thereto.  There are no agreements, understandings, restrictions, representations, or warranties among the parties other than those set forth herein or herein provided for.

20.11   <u>Agreement in Counterparts</u>.  This Agreement may be executed in any number of counterparts and all so executed shall constitute one Agreement, binding on all the parties hereto, notwithstanding that all the parties are not signatories to the original or the same counterpart.

20.12   <u>Waiver of Partition</u>.  Each of the parties hereto irrevocably waives during the term of the Partnership any right to maintain any action for partition with respect to any Partnership property.

20.13   <u>Time</u>.  Time is of the essence to this Agreement.

20.14   <u>Remedies Not Exclusive</u>.  Any remedies herein contained for a breach of obligation hereunder shall not be deemed to be exclusive, and shall not impair the right of any party to exercise any other right or remedy, whether for damages, injunction or otherwise.  Limited Partner hereby agrees to indemnify and hold harmless the Partnership, its General Partner, it's members, its General Partner's affiliates, its other Limited Partners, and the respective employees, agents and attorneys of each against any and all losses, claims, demands, liabilities and expenses (including reasonable legal or other expenses) incurred by each such person or entity in connection with any claims or liabilities arising from the offering.

20.15  <u>Legal Counsel</u>.  Legal counsel for the General Partner or one of its Affiliates may represent the Partnership in connection with legal work or issues arising in connection with the Partnership.  Each Limited Partner recognizes and acknowledges that any such counsel will be acting as legal counsel for the Partnership with respect to each such matter and shall not be acting as the legal counsel of any individual Limited Partner.  Each Limited Partner further recognizes and accepts that its interest with respect to any such matter may be adverse to the interests of the other Limited Partners and of the Partnership.  Each Limited Partner nevertheless consents to the representation of the Partnership by such counsel with respect to each such matter and waives for the benefit of each other Limited Partner and of such counsel any potential or actual conflict of interest between or among such Limited Partners and between any such Limited Partners and the Partnership.  Each Limited Partner acknowledges that in the event of any future dispute or litigation between or among the Limited Partners and/or between any of the Limited Partners and the Partnership, such counsel may continue to represent its General Partner client, notwithstanding any such dispute and its prior representation of the Partnership.

20.16  <u>Advice from Independent Legal Counsel; Voluntary Agreement</u>.  Notwithstanding Section 21.15, the Limited Partners represent and warrant that (a) each of them has had the opportunity to be represented by legal and tax counsel of its choice, (b) each of them has had the opportunity to consult with such counsel regarding this Agreement, and (c) except as set forth herein, each of them has not relied in any way on any representation or other statement made by any other Limited Partner or its legal or tax counsel or by any other Person.

20.17  <u>Patent Errors</u>.  The Limited Partners hereby authorize and direct the General Partner to correct patent errors and to fill in any blanks, which blanks shall not be substantive to the terms hereof, in this Agreement or in any exhibit, instrument, document or agreement related hereto and to attach hereto or thereto any exhibits or schedules which are a part hereof or thereof.

20.18  <u>Currency</u>.  All references to "dollars" in this Agreement shall mean United States Dollars.

20.19  <u>Limited Partner</u>.  The partners signing this agreement have read and agreed to the complete PPM, and its related documents.  They are in full agreement and have received all exhibits, and referenced related documents in the PPM.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the parties hereto have entered into this Agreement as of the date first above written.

> **GENERAL PARTNER:**
>
> **ISR CAPITAL, LLC,**
> an Idaho limited liability company
>
> By:_____
> Print Name:     SIMA MUROFF
> Title:          Authorized Officer

# QUARTZBURG GOLD, LP
## LIMITED PARTNERSHIP AGREEMENT

## <u>LIMITED PARTNER SIGNATURE PAGE</u>

**LIMITED PARTNER:**

_____
(Signature)


_____
(Print Name)

_____
(Date)


**Address:** _____

_____

_____


**Telephone:** _____

E-Mail Address: _____

**Passport No. and Country of Passport Issue:**
_____

**SCHEDULE 1**

# Quartzburg Gold, LP

List of Partners and Capital Contributions

| Number | Name of Partner | Role in Limited Partnership | Capital Contribution | Date of Capital Contribution |
|--------|-----------------|-----------------------------|----------------------|------------------------------|
| 1 | ISR Capital, LLC | General Partner | 0 | February 3, 2012 |
| 2 | | Limited Partner | $500,000 | |
| 3 | | Limited Partner | $500,000 | |
| 4 | | Limited Partner | $500,000 | |
| 5 | | Limited Partner | $500,000 | |